UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------
JESSICA TOWNS, on behalf of himself and          Case No.
all others similarly situated,

                                   **CLASS ACTION COMPLAINT**
            Plaintiff,                      **& DEMAND FOR JURY**
                                     <u>**TRIAL**</u>

           v.

OFFSPRING BEAUTY CO. d/b/a VERSED,

               Defendant.
-----------------------------------------------------------------

      Plaintiff, **JESSICA TOWNS**, ("Plaintiff" or "Ms. Towns"), on behalf of himself and all

others similarly situated (collectively, "Plaintiffs"), by and through their undersigned counsel,

JOSEPH & NORINSBERG, LLC, as and for their putative class action complaint upon Defendant,

OFFSPRING BEAUTY CO., d/b/a VERSED ("" or "Defendant"), hereby alleges as follows:

## <u>INTRODUCTION</u>

      1.     Plaintiff, Jessica Towns, a resident of Bronx County, is permanently disabled due

to posterior vitreous detachment resulting in total blindness in her right eye with no light

perception, as certified by Dr. Michelle Bangiyev, OD, of Pelham Gardens Eye Associates, Bronx,

NY. The certification, dated January 1, 2025, further confirms that Ms. Towns's left eye has visual

acuity of less than 20/200, rendering her legally blind. **(see Exhibit A)** Ms. Towns is unable to

read printed materials and relies on screen-reading software to access digital content.

      2.     Ms. Towns is an avid and proficient user of the NVDA (NonVisual Desktop

Access) screen reader, which she relies on daily to navigate digital environments independently.

Having completed structured training through Lighthouse Guild programs, she uses NVDA to

access websites, email, and legal documents with precision and confidence. Her fluency with keyboard commands and screen-reading protocols enables her to engage with complex content, including PDF forms and online portals, without assistance. NVDA's compatibility with her preferred assistive technologies has made it an indispensable tool in her pursuit of autonomy and digital accessibility.

3.      Plaintiff brings this civil action against Defendant, Offspring Beauty Co. doing business as Versed, for its failure to design, construct, maintain, and operate its highly interactive website, www.versedskin.com, in a manner that is fully accessible to and independently usable by blind and visually impaired individuals. Defendant's denial of full and equal access to its website—and therefore to the essential products and services offered therein—constitutes a violation of Plaintiff's rights under the Americans with Disabilities Act (ADA).

4.      Defendant, Offspring Beauty Co., d/b/a Versed, is a Delaware corporation with a principal business mailing address at 215 Park Avenue South, Suite 1801, New York, New York 10003, and operational headquarters in West Hollywood, California. Defendant owns and operates the website www.versedskin.com (the "Website" or "Defendant's Website"), which offers consumers access to skincare products, ingredient education, subscription services, and personalized product recommendations nationwide, including in New York.

5.      Defendant Offspring Beauty Co., doing business as Versed, is a Delaware corporation with its operational headquarters located at 750 North San Vicente Boulevard, West Hollywood, California. While the company primarily operates from California, it maintains a principal business mailing address at 215 Park Avenue South, Suite 1801, New York, New York 10003. Defendant owns and operates the website www.versedskin.com (the "Website" or

2

"Defendant's Website"), which offers consumers nationwide access to skincare products, ingredient education, subscription services, and personalized product recommendations, including to residents of New York.

6.      Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind, and according to the American Foundation for the Blind's 2015 report, approximately 400,000 visually impaired persons live in the State of New York.

7.      Congress has issued a clear and national mandate to eliminate discrimination against individuals with disabilities. Such discrimination includes barriers to full integration, independent living, and equal opportunity—barriers that are perpetuated by websites and other public accommodations that remain inaccessible to blind and visually impaired persons. Both New York State and New York City law similarly require places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

8.      Versed has operated as a public-facing digital platform since its launch in 2019, offering clean skincare products to a nationwide consumer base. Despite its rapid growth and venture capital backing, Defendant has failed to implement WCAG-compliant features across its Website. A recent accessibility audit conducted by Plaintiff's counsel on two separate occasions weeks apart, confirms that the Website remains riddled with violations, including missing alternative text, unlabeled form fields, keyboard navigation traps, lack of ARIA roles, and no skip links or semantic landmarks. Defendant's failure to remediate—despite clear federal guidance and ample opportunity—reflects a sustained and knowing disregard for the rights of individuals with

3

disabilities.

9.      Plaintiff is deeply invested in maintaining her skincare regimen and relies on ingredient transparency due to a history of dermatological sensitivity. She specifically sought out Versed because of its reputation for clean formulations, educational content, and affordability. Plaintiff browsed the Website intending to learn about product ingredients, build a personalized routine, and complete a purchase. However, unless Defendant remedies the numerous access barriers, Plaintiff will continue to be unable to independently navigate, browse, use, and complete a transaction. Defendant is denying blind and visually impaired persons throughout the United States equal access to the goods and services it provides to non-disabled customers. Defendant's denial of full and equal access—and therefore denial of its products and services—is a violation of Plaintiff's rights under the Americans with Disabilities Act (ADA).

10.     Plaintiff seeks a permanent injunction requiring Defendant to revise its corporate policies, practices, and procedures to ensure that its Website becomes and remains accessible to blind and visually impaired users.

## JURISDICTION AND VENUE

11.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12182 because Plaintiff's claims arise under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, et seq.

12.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims, including those under the New York State Human Rights Law, Article 15 (Executive Law § 290 et seq.) ("NYSHRL"); the New York City Human Rights Law, N.Y.C.

Admin. Code § 8-101 et seq., ("NYCHRL") and § 296 et seq.; and the New York State Civil

Rights Law, Article 4, §§ 40-c and 40-d ("NYCRL").

13.    Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) because

Defendant conducts substantial and continuous business in this District through its interactive

website. Plaintiff has repeatedly accessed and attempted to use the Website from her residence in

New York County, which falls within this Court's jurisdiction. A significant portion of the

discriminatory conduct giving rise to this action occurred within the Southern District of New

York ("SDNY").

14.    Defendant is registered to do business in New York State and has been conducting

business in New York State, including in this District. Defendant purposefully targets and solicits

business from New York State residents through its website, www.versedskin.com. Because of

this targeting, it is not unusual for Versed to conduct business with New York State residents.

Defendant has committed and continues to commit the acts alleged herein in this District, violating

the rights of consumers and causing injury to individuals in this District. All acts and omissions

giving rise to Plaintiff's claims have occurred within this District. Courts routinely support venue

placement in the district where the plaintiff attempted and failed to access the website. In, *Access*

*Now, Inc. v. Otter Products, LLC,* 280 F. Supp. 3d 287 (D. Mass. 2017), for instance, Judge Patti

B. Saris ruled that "although the website may have been created and operated outside of the

district, the attempts to access the website in Massachusetts are part of the sequence of events

underlying the claim. Therefore, venue is proper in [the District of Massachusetts]." *Otter Prods.,*

280 F. Supp. 3d at 294. This satisfies Due Process because the harm—the barred access to the

website—occurred here. *Otter Prods.,* 280 F. Supp. 3d at 293. Additionally, in *Access Now, Inc.*

*v. Sportswear, Inc.,* No. 17-cv-11211-NMG, 2018 Dist. LEXIS 47318 (D. Mass. Mar. 22, 2018),

Judge Nathaniel M. Gorton stated that the defendant "availed itself of the forum state's economic

activities by targeting the residents of the Commonwealth... Such targeting evinces a voluntary

attempt to appeal to the customer base in the forum." *Sportswear*, No. 1:17-cv-11211-NMG, 2018

U.S. Dist. LEXIS 47318 at *11. Thus, establishing a customer base in a particular district is

sufficient cause for venue placement.

15.     Thus, jurisdiction and venue are appropriate in this District because Plaintiff

resides here, and courts have consistently held that website accessibility barriers encountered by

users within the District provide a sufficient basis for personal jurisdiction over out-of-state

operators.

## THE PARTIES

16.     Plaintiff, Jessica Towns, is and was at all relevant times a resident of Bronx County,

New York.

17.     Plaintiff is legally blind and visually impaired, qualifying as an individual with a

disability under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102(1)-(2), its

implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the New York City Human Rights

Law ("NYCHRL"). She has no light perception in her right eye and visual acuity below 20/200 in

her left eye, as certified by Dr. Michelle Bangiyev, OD, of Pelham Gardens Eye Associates.

Plaintiff is unable to read printed materials and relies exclusively on screen-reading software,

including NonVisual Desktop Access ("NVDA"), to access digital content. She has completed

formal orientation and mobility training through Lighthouse Guild programs and remains highly

motivated to maintain independence through assistive technology.

18.     Upon information and belief, Defendant Offspring Beauty Co., doing business as Versed ("Versed"), is a Delaware corporation with its principal business mailing address at 215 Park Avenue South, Suite 1801, New York, New York 10003, and operational headquarters at 750 North San Vicente Boulevard, West Hollywood, California 90069. Defendant owns and operates the website www.versedskin.com, which offers consumers nationwide access to skincare products, ingredient education, subscription services, and personalized product recommendations, including to residents of New York.

19.     Defendant's website functions as a commercial place of public accommodation subject to Title III of the ADA and the NYCHRL. At all relevant times, Defendant has maintained control over the design, coding, and digital infrastructure of the Website and is responsible for ensuring its compliance with applicable accessibility standards, including the Web Content Accessibility Guidelines ("WCAG") 2.1 Level AA. Although the Website includes a nominal "screen-reader mode" and references accessibility in its footer, it lacks meaningful ARIA labeling, semantic structure, and keyboard operability across key interactive features. These deficiencies render the Website inaccessible to blind users and place Defendant on constructive notice of noncompliance.

## NATURE OF ACTION

20.     This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq., challenging Defendant operation of a public-facing website that denies blind and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of this District, attempted to access Defendant's website using screen-reading software but encountered multiple access barriers that prevented meaningful engagement with its services. Defendant's

failure to design and maintain its website in accordance with the Web Content Accessibility Guidelines (WCAG 2.1) constitutes unlawful discrimination and violates federal accessibility standards.

21.    The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, learning, banking, researching, and communicating—for sighted, blind, and visually impaired individuals alike.

22.    In today's digital environment, blind and visually impaired individuals access websites using keyboards in conjunction with screen access software that vocalizes visual content or displays it on a refreshable Braille device. This technology, known as screen-reading software, is currently the only method by which blind or visually impaired persons may independently access the Internet. Unless websites are properly coded to interface with screen-reading software, blind and visually impaired users are unable to fully access the information, products, and services offered online.

23.    Blind and visually impaired users of Windows-enabled computers have access to several screen-reading software programs. Some are commercially available, while others—such as Nonvisual Desktop Access ("NVDA")—are free and widely used.

24.    Plaintiff, Jessica Towns is a blind, visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the NYCHRL. To access the Internet, Plaintiff relies on screen-reading software such as NVDA for Windows.

25.    Screen-reading software "translates the visual Internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user." *Andrews v. Blick Art*

8

*Materials, LLC,* 286 F. Supp. 3d 365, 375 (E.D.N.Y. 2017). As Judge Weinstein explained:

> "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring her to another webpage, through visual cues, such as a change in the color of the text… The screen reading software uses auditory—rather than visual—cues to relay this same information… Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard."

> See also American Federation for the Blind, *Screen Readers*, AFB Technology Guide (last accessed June 12, 2025), estimating that 26 million American adults report sight deficiency.

26.     Plaintiff attempted to access Defendant's website on multiple occasions from her residence in Bronx County, including on August 21, 2025, and August 25, 2025. During these attempts, she sought to create an account, navigate product offerings, utilize interactive features such as quizzes, and complete transactions independently. However, she encountered numerous accessibility barriers—such as unlabeled interactive elements, lack of keyboard navigation, and incompatible screen reader functionality—that effectively prevented her from using the Website without sighted assistance.

## UNIQUE FEATURES OF VERSEDSKIN.COM

Defendant Offspring Beauty Co., d/b/a Versed, operates a national skincare platform through its website www.versedskin.com, which is accessible to consumers across the United States, including New York. The website functions as a commercial place of public accommodation under Title III of the ADA and the NYCHRL. At all relevant times, Defendant has maintained control over the design, coding, and digital infrastructure of the site and is responsible for ensuring its compliance with applicable accessibility standards.

**Product Discovery Interface**

The Versed' website features a visually driven product discovery interface, including image carousels, hover-triggered pop-ups, and modal overlays. These elements rely on mouse-based navigation and lack sufficient ARIA labeling, semantic structure, and keyboard operability, rendering them inaccessible to blind users relying on screen-reading software.

**Skin Quiz and Diagnostic Tools**

The platform offers interactive quizzes designed to recommend skincare products  based on user input. These tools include dynamic form fields, conditional logic, and visual-only feedback mechanisms. The absence of accessible form labeling and screen reader compatibility prevents blind users from completing the quiz or receiving meaningful results.

**Checkout and Subscription Flow**

Versed's e-commerce flow includes multi-step checkout modals, embedded promotional banners, and timed pop-ups. These elements are not consistently coded for screen reader navigation and lack skip links, focus management, and descriptive metadata, creating barriers to completing purchases independent

## **STANDING**

27.     Plaintiff Jessica Towns is a legally blind individual residing in Bronx County, New York. Her blindness is medically documented as total visual impairment, with no light perception in her right eye and visual acuity below 20/200 in her left eye. This diagnosis was certified by Dr. Michelle Bangiyev, OD, of Pelham Gardens Eye Associates, on January 1, 2025. See Exhibit A.

28.     Ms. Towns uses NVDA screen-reading software to access digital content and perform essential tasks. She relies on accessible websites to research skincare products, manage personal purchases, and engage with ingredient education and subscription services.

29.     During her August 21 and August 25, 2025, visits to www.versedskin.com, Plaintiff attempted to locate and purchase the *Daily Recovery Rich Barrier Cream*, *Skin Solution Multi-*

10

*Serum Skin Tint SPF 40*, and *Day Dissolve Cleansing Balm*. While navigating the site with NVDA screen-reading software, she encountered unlabeled buttons that blocked access to the "Add to Cart" function, preventing her from initiating a purchase. Promotional graphics for the *Skin Soak Moisture Cream* lacked alt text, rendering product descriptions inaccessible. The interactive skin quiz—which Plaintiff attempted to complete to receive personalized recommendations—contained mouse-dependent sliders and modal dialogs that could not be activated via keyboard navigation. These barriers obstructed her ability to compare product ingredients, confirm suitability, and complete a transaction independently. As a result, Plaintiff was excluded from meaningful participation in the shopping experience and denied equal access to Versed's core offerings.

30.    Plaintiff was denied full and equal access due to persistent accessibility barriers, including:

- Unlabeled buttons obstructing navigation and form submission
- Missing alt. text on interactive graphics and document previews
- Keyboard traps and inaccessible modal dialogs
- Broken links blocking access to support and search functions.

31.    Despite multiple attempts, Plaintiff remains interested in using Defendant's product and intends to return once the site is made accessible. His intent is not speculative—it is driven by necessity, as Versed offers proprietary skincare tools, product bundles, and ingredient education not replicated elsewhere.

32.    On September 20, 2025, Plaintiff's in-house accessibility expert conducted a comprehensive audit of www.versedskin.com, using PowerMapper's SortSite program. The audit

11

covered consumer-facing sections of the site, including product listings, quiz interfaces, checkout flows, and account management tools. See Exhibits B–D.

33.    The broken link report identified over 1,200 pages containing links with empty href or src attributes, including navigation menus and promotional banners. These broken links triggered JavaScript errors and prevented screen readers from interpreting or activating key elements. Several pages also contained anchor links targeting non-existent IDs, rendering skip links and internal navigation unusable.

34.    The accessibility validation report uncovered 41 Level A violations across 2,100 pages, including:

  ☐ Missing alt text and placeholder descriptions such as "productImage," "promoBanner," and "quizStep"'

  ☐ Autoplaying videos without pause controls

  ☐ Improperly structured tables and mouse-dependent controls lacking keyboard equivalents

35.    The audit also revealed markup errors that interfere with screen reader functionality, including duplicate IDs, empty button elements, and form controls with no accessible name. Numerous pages contained untagged PDFs, making critical documentation inaccessible. Additionally, the tab order on many pages did not follow a logical sequence, causing confusion and disorientation during keyboard navigation.

36.    These findings constitute conclusive evidence of inaccessibility. The violations are systemic, recurring across thousands of pages, and directly impact the ability of blind users to browse products, complete quizzes, manage accounts, and execute purchases independently.

Defendant's website fails to meet the minimum standards required under Title III of the ADA.

37.    The accessibility barriers identified—such as missing alt text, non-descriptive link text, unlabeled form fields, keyboard traps, inaccessible modal dialogs, and improper heading structures—were not isolated glitches. They were systemic failures that denied Plaintiff the ability to browse, evaluate, and interact with genealogical content independently and with dignity. These barriers violate WCAG 2.1 Level AA and constitute unlawful discrimination under 42 U.S.C. § 12182.

38.    Plaintiff's experience on  www.versedskin.com  was not merely inconvenient—it was exclusionary. Each attempt to access product information, complete the skin quiz, or finalize a purchase ended in frustration, as unlabeled buttons, inaccessible modals, and mouse-dependent features blocked her path. She was unable to compare product ingredients, confirm suitability, or participate in the shopping experience independently.

39.    Plaintiff's intent to return to www.versedskin.com is imminent and repeated. She relies on the platform's proprietary tools and curated product bundles to perform essential tasks related to her personal care and digital independence.

40.     Versed is uniquely positioned in the skincare space. Unlike other platforms, it offers:

- A proprietary skin quiz that generates personalized product recommendations
- Ingredient transparency tools and educational overlays
- Subscription bundles and promotional campaigns tailored to user profiles
- Exclusive access to curated formulations not available on third-party retail sites

41.    Plaintiff has previously attempted to use alternative skincare platforms, including Sephora.com and Ulta.com, but found them lacking in personalization, ingredient education, and

13

interactive diagnostic tools. These platforms do not offer the same depth of engagement or tailored product matching required for Plaintiff's skincare needs.

42.     Until the digital barriers on www.versedskin.com  are removed, Plaintiff remains excluded from a platform that purports to democratize access to clean skincare but fails to deliver accessibility to blind users.

## CLASS ACTION ALLEGATIONS

43.     Plaintiff Jessica Towns brings this action on behalf of himself, and all others similarly situated, seeking certification of a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access www.versedskin.com  and were denied equal access to its products, services, and support due to persistent digital accessibility barriers during the relevant statutory period.

44.     Plaintiff also seeks certification of a New York Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals residing in the City and State of New York who have attempted to access www.versedskin.com and were similarly denied equal access to its offerings due to the same systemic barriers.

45.     Common questions of law and fact exist among the Class, including:

46.     Whether www.versedskin.com qualifies as a "public accommodation" under Title III of the ADA;

47.     Whether Defendant's Website constitutes a "place or provider of public accommodation" under the NYCHRL;

48.     Whether the website's persistent accessibility barriers violate the ADA by denying

14

blind users full and equal access to Ancestry's products, services, and support;

49.    Whether the same barriers violate the NYCHRL, NYCRL, and NYSHRL by excluding blind users from meaningful participation in the digital marketplace.

50.    Plaintiff's claims are typical of the Class. Like other blind individuals, she relies on screen-reading software and keyboard navigation to access online platforms. She encountered the same systemic barriers—unlabeled buttons, inaccessible forms, mouse-dependent controls, and unreadable product specifications—that affect all Class members.

51.    Plaintiff will fairly and adequately represent the interests of the Class. She has retained counsel experienced in disability rights and complex class action litigation. Plaintiff has no interests antagonistic to those of the Class and seeks injunctive and declaratory relief applicable to all members.

52.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or failed to act on grounds generally applicable to the Class, warranting injunctive relief to remediate the website's accessibility barriers.

53.    Alternatively, certification is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over individual issues, and a class action is the most efficient and fair method for adjudicating these claims.

54.    Maintaining this action as a class proceeding will promote judicial economy by avoiding duplicative litigation and ensuring uniform relief for a class likely to include hundreds, if not thousands, of blind individuals who have attempted to use www.ancestry.comand faced exclusion.

55.

## FIRST CAUSE OF ACTION
### (Violations of the ADA, 42 U.S.C. § 12182 *et seq.*)

56.     Plaintiff, JESSICA TOWNS, on behalf of herself and the Class Members, repeats

and realleges every allegation of the preceding paragraphs as if fully set forth herein.

57.     Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

> No individual shall be discriminated against on the basis of disability in the full and
> equal enjoyment of the goods, services, facilities, privileges, advantages, or
> accommodations of any place of public accommodation by any person who owns,
> leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

58.     Defendant's Website that is offered as a link to the company is a service that is

offered to the general public, and as such, must be equally accessible to all potential consumers.

59.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to

deny individuals with disabilities the opportunity to participate in or benefit from the products,

services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. §

12182(b)(1)(A)(i).

60.     Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also

includes, <u>inter alia</u>:

> [A] failure to make reasonable modifications in policies, practices, or procedures,
> when such modifications are necessary to afford such goods, services, facilities,
> privileges, advantages, or accommodations to individuals with disabilities, unless
> the entity can demonstrate that making such modifications would fundamentally
> alter the nature of such goods, services, facilities, privileges, advantages or
> accommodations; [and] a failure to take such steps as may be necessary to ensure
> that no individual with a disability is excluded, denied services, segregated or
> otherwise treated differently than other individuals because of the absence of
> auxiliary aids and services, unless the entity can demonstrate that taking such steps
> would fundamentally alter the nature of the good, service, facility, privilege,
> advantage, or accommodation being offered or would result in an undue burden.

16

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

61.    The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as the violations are ongoing.

62.    Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

## SECOND CAUSE OF ACTION
### (Violations of the New York City Human Rights Law) ("NYCHRL")

63.    Plaintiff, JESSICA TOWNS, on behalf of herself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

64.    N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse,

17

withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

65.    Defendant is subject to NYCHRL because it owns and operates the Website www.versedskin.com, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

66.    Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

67.    Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

68.    Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

      a.    constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

      b.    constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

18

c.      failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

69.     Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

70.     As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

71.     Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

72.     Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

73.     Plaintiff is also entitled to reasonable attorneys' fees and costs.

74.     Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## THIRD CAUSE OF ACTION
### (New York State Human Rights Law)
### ("NYSHRL")

75.     Plaintiff, JESSICA TOWNS, on behalf of herself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

76.     At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

77.     Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

78.     Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, within the meaning of Article 15 of N.Y. Executive Law § 292(9).  Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

79.     Plaintiff has visited the Website on a number of occasions and has encountered barriers to his access that exist.

80.     Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person

any of the accommodations, advantages, facilities or privileges thereof."

81.    Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

82.    Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities.  This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device.  Article 15 of N.Y. Exec. Law § 296(2)(c).

83.    The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

84.     Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1").  WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

85.     Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

86.     Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

87.     Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

**FOURTH CAUSE OF ACTION**
**(Violation of New York State Civil Rights)**
**("NYCRL")**

88.     Plaintiff, JESSICA TOWNS, on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

89.     Plaintiff served notice thereof upon the New York State Attorney General, as

required by N.Y. Civil Rights Law § 41. (Exhibit 1) (Notice to Attorney General)

90.    Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

91.    No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

92.    § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

93.    Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

94.    Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

95.    Defendant has failed to take any steps to halt and correct its discriminatory conduct

23

and discriminate against the Plaintiff and the Subclass members.

96.    Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id…*

97.    Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

## FIFTH CAUSE OF ACTION
### (Declaratory Relief)

98.    Plaintiff, JESSICA TOWNS, on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

99.    An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

100.    A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a.  A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b.  A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c.  A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d.  An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e.  Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

f.  Pre-judgment and post-judgment interest;

g.  An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h.  Such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

25

Dated: New York, New York
       September 30, 2025

Respectfully submitted,

**JOSEPH & NORINSBERG, LLC**

*/s/ Robert Schonfeld*
Robert Schonfeld, Esq
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
rschoenfeld@employeejustice.com

26